# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-852V
**Filed: October 18, 2016**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | UNPUBLISHED |
| ADAM LUNA, parent of E.L., a minor | * | |
| | * | Special Master Hamilton-Fieldman |
| Petitioner, | * | |
| | * | Joint Stipulation on Damages; |
| v. | * | Influenza Vaccine; Transverse |
| | * | Myelitis. |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioner.
Julia W. McInerny, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION[1]

On October 29, 2013, Adam Luna ("Petitioner") filed a petition on behalf of his minor child, E.L., for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to -34 (2012). Petitioner alleged that as a result of an influenza ("flu") vaccine administered on December 1, 2010, E.L. suffered neurological injuries and/or transverse myelitis ("TM"). See Stipulation for Award at ¶ 2, 4, filed Oct. 17, 2016.

On October 17, 2016, the parties filed a stipulation in which they state that a decision should be entered awarding compensation to Petitioner. Respondent denies that the flu vaccine caused E.L. to suffer neurological injuries and/or TM, or any other injury, or his current

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, codified as amended at 44 U.S.C. § 3501 note (2012). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

condition. Nevertheless, the parties agree to the joint stipulation, attached hereto as Appendix A. The undersigned finds the stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

The parties stipulate that Petitioner shall receive the following compensation:

1) **A lump sum of $703,893.87, which amount represents compensation for first year life care expenses ($211,960.20), partial lost future earnings ($314,433.67), and pain and suffering ($177,500.00), in the form of a check payable to Petitioner as guardian(s)/conservator(s) of the estate of E.L. for the benefit of E.L. No payments shall be made until Petitioner provides Respondent with documentation establishing that he has been appointed as the guardian(s)/conservator(s) of E.L.'s estate;**

2) **A lump sum of $22,970.88, which amount represents compensation for past unreimburseable expenses, in the form of a check payable to Petitioner, Adam Luna;**

3) **A lump sum of $15,189.22, which amount represents reimbursement of a lien for vaccine-related services rendered on behalf of E.L., in the form of a check payable jointly to Petitioner and**

   **Alabama Medicaid Agency**
   **c/o HMS**
   **Attn: AL Medicaid Subrogation Unit**
   **2000 Interstate Park Dr., Suite 401**
   **Montgomery, AL 36109**
   **Medicaid I.D. #: 500002251491**

4) **An amount sufficient to purchase the annuity contract described in paragraph 10 of the parties' stipulation, to be paid to a life insurance company meeting the criteria described in paragraph 9 of the parties' stipulation, from which the annuity will be purchased.**

Id. at ¶ 8. **These amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a).** Id.

The undersigned approves the requested amounts for Petitioner's compensation. Accordingly, an award should be made consistent with the stipulation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[3]

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

                                                <u>s/ Lisa Hamilton-Fieldman</u>
                                                Lisa Hamilton-Fieldman
                                                Special Master

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| ADAM LUNA, parent of E.L., a minor ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> SECRETARY OF HEALTH AND HUMAN ) <br> SERVICES, ) <br> ) <br> Respondent. ) <br> ) <br> ) | ECF <br> No. 13-852V <br> Special Master Hamilton-Fieldman |

STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of his son, E.L., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to E.L.'s receipt of the influenza ("flu") vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. E.L. received the flu immunization on December 1, 2010.

3. The vaccine was administered within the United States.

4. Petitioner alleges that E.L. suffered neurological injuries and/or transverse myelitis ("TM") as a result of receiving the vaccine.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of E.L. as a result of his condition.

6. Respondent denies that the vaccine caused E.L. to suffer neurological injuries and/or TM, or any other injury or his current condition.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

a. A lump sum of $703,893.87, which amount represents compensation for first year life care expenses ($211,960.20), partial lost future earnings ($314,433.67), and pain and suffering ($177,500.00), in the form of a check payable to petitioner as guardian(s)/conservator(s) of the estate of E.L. for the benefit of E.L. No payments shall be made until petitioner provides respondent with documentation establishing that he has been appointed as the guardian(s)/conservator(s) of E.L.'s estate;

b. A lump sum of $22,970.88, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioner, Adam Luna;

c. A lump sum of $15,189.22, which amount represents reimbursement of a lien for vaccine-related services rendered on behalf of E.L., in the form of a check payable jointly to petitioner and

Alabama Medicaid Agency<br>
c/o HMS<br>
Attn: AL Medicaid Subrogation Unit<br>
2000 Interstate Park Dr., Suite 401<br>
Montgomery, AL 36109<br>
Medicaid I.D. #: 500002251491

Petitioner agrees to endorse this payment to the Alabama Medicaid Agency c/o HMS.

d. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract(s) from the Life Insurance Company for the benefit of E.L., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioner, as the court-appointed guardian(s)/conservator(s) of the estate of E.L. for the following items of compensation:

a. For future unreimbursable BCBS Premium expenses, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $1,378.00 to be paid up to the anniversary of the date of judgment in year 2030, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable BCBS Deductible and Maximum-out-of-Pocket, Neurologist, Physiatrist, Pediatrician/Primary Care Physician, Urologist, Orthopedist, Emergency Room, and Emergency Room Physician expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,160.00 to be paid up to the anniversary of the date of judgment in year 2031. Then, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $1,120.00 to be paid up to the anniversary of the date of judgment in year 2045, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable BCBS Insurance Premium expenses, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $4,872.00 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $4,956.00 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $5,076.00 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $5,220.00 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in year 2049, an annual amount of $5,400.00 to be

paid up to the anniversary of the date of judgment in year 2050. Then, beginning on the anniversary of the date of judgment in year 2050, an annual amount of $5,616.00 to be paid up to the anniversary of the date of judgment in year 2051. Then, beginning on the anniversary of the date of judgment in year 2051, an annual amount of $5,844.00 to be paid up to the anniversary of the date of judgment in year 2052. Then, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $6,120.00 to be paid up to the anniversary of the date of judgment in year 2053. Then, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $6,384.00 to be paid up to the anniversary of the date of judgment in year 2054. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $6,684.00 to be paid up to the anniversary of the date of judgment in year 2055. Then, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $6,972.00 to be paid up to the anniversary of the date of judgment in year 2056. Then, beginning on the anniversary of the date of judgment in year 2056, an annual amount of $7,296.00 to be paid up to the anniversary of the date of judgment in year 2057. Then, beginning on the anniversary of the date of judgment in year 2057, an annual amount of $7,632.00 to be paid up to the anniversary of the date of judgment in year 2058. Then, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $7,980.00 to be paid up to the anniversary of the date of judgment in year 2059. Then, beginning on the anniversary of the date of judgment in year 2059, an annual amount of $8,340.00 to be paid up to the anniversary of the date of judgment in year 2060. Then, beginning on the anniversary of the date of judgment in year 2060, an annual amount of $8,724.00 to be paid up to the anniversary of the date of judgment in year 2061. Then, beginning on the anniversary of the date of judgment in year 2061, an annual amount of $9,120.00 to be paid up to the anniversary of the date of judgment in year 2062. Then, beginning on the anniversary of the date of judgment in year 2062, an annual amount of $9,528.00 to be paid up to the anniversary of the date of judgment in year 2063. Then, beginning on the anniversary of the date of judgment in year 2063, an annual amount of $9,732.00 to be paid up to the anniversary of the date of judgment in year 2064. Then, beginning on the anniversary of the date of judgment in year 2064, an annual amount of $10,152.00 to be paid up to the anniversary of the date of judgment in year 2065. Then, beginning on the anniversary of the date of judgment in year 2065, an annual amount of $10,512.00 to be paid up to the anniversary of the date of judgment in year 2066. Then, beginning on the anniversary of the date of judgment in year 2066, an annual amount of $10,752.00 to be paid up to the anniversary of the date of judgment in year 2067. Then, beginning on the anniversary of the date of judgment in year 2067, an annual amount of $11,040.00 to be paid up to the anniversary of the date of judgment in year 2068. Then, beginning on the anniversary of the date of judgment in year 2068, an annual amount of $11,220.00 to be paid up to the anniversary of the date of judgment in year 2069, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable BCBS Insurance Maximum-out-of-Pocket expenses, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $6,000.00 to be paid up to the anniversary of the date of judgment in year 2069, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

e. For future unreimbursable Medicare Part B Deductible expenses, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $166.00 to be paid for the remainder of E.L.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

f. For future unreimbursable Medigap Plan G expenses, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $1,462.68 to be paid up to the anniversary of the date of judgment in year 2072. Then, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $1,517.04 to be paid up to the anniversary of the date of judgment in year 2073. Then, beginning on the anniversary of the date of judgment in year 2073, an annual amount of $1,571.40 to be paid up to the anniversary of the date of judgment in year 2074. Then, beginning on the anniversary of the date of judgment in year 2074, an annual amount of $1,625.76 to be paid up to the anniversary of the date of judgment in year 2075. Then, beginning on the anniversary of the date of judgment in year 2075, an annual amount of $1,680.00 to be paid up to the anniversary of the date of judgment in year 2076. Thereafter, beginning on the anniversary of the date of judgment in year 2076, an annual amount of $2,364.84 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

g. For future unreimbursable Medicare Part D expenses, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $524.40 to be paid for the remainder of E.L.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

h. For future unreimbursable Acute Hospitalization expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $200.00. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $200.00. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $200.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $200.00. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $200.00, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

i. For future unreimbursable Polyethylene Glycol Powder, Suppository, and Calcium/Vitamin D expenses, beginning on the first anniversary of the date of judgment, an annual amount of $242.09 to be paid for the remainder of E.L.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

j. For future unreimbursable Kennedy Krieger Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,189.00 to be paid up to the anniversary of the date of judgment in year 2025, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

k. For future unreimbursable Kennedy Krieger Spinal Cord Restoration Center Occupational Therapy expenses, on the anniversary of the date of judgment in year 2018,

a lump sum of $200.00. Then, on the anniversary of the date of judgment in year 2022, a lump sum of $200.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

l. For future unreimbursable Psychological Counseling expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $150.00. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $150.00. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $150.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $150.00. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $150.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

m. For future unreimbursable Case Manager expenses, beginning on the first anniversary of the date of judgment, an annual amount of $500.00 to be paid for the remainder of E.L.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

n. For future unreimbursable Replacement Charger, Power Assist Wheelchair Battery and Power Assist Wheelchair Maintenance, Motorized Wheelchair with Elevating Seat, Battery and Maintenance, Titanium Manual Wheelchair, Hand Held Shower, Intimate Rider, FES Maintenance, Auto Door Battery, and Wheelchair Carry Bag expenses, beginning on the first anniversary of the date of judgment, an annual amount of $549.95 to be paid up to the anniversary of the date of judgment in year 2021. Then, on the anniversary of the date of judgment in year 2021, a lump sum of $624.95. Then, beginning on the anniversary of the date of judgment in year 2022, an annual amount of $549.95 to be paid up to the anniversary of the date of judgment in year 2025. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $3,144.95. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $1,585.66. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $757.16. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $940.16. Then, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $798.16 to be paid up to the anniversary of the date of judgment in year 2031. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $873.16. Then, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $805.66 to be paid up to the anniversary of the date of judgment in year 2044. Then, on the anniversary of the date of judgment in year 2044, a lump sum of $744.66. Then, on the anniversary of the date of judgment in year 2045, a lump sum of $3,339.66. Thereafter, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $3,823.66 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

o. For future unreimbursable Cushion Cover, RoHo Cushion Cover, Six Foot Portable Ramp, Trapeze Hydraulic Lift, Beasy Board Glider Transfer System, and Reacher expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $136.50. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $1,451.68. Then, on the anniversary of the date of judgment in year 2031, a lump sum of

$136.50. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $1,395.18. Thereafter, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $171.52 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

p. For future unreimbursable Medical Alert System expenses, beginning on the first anniversary of the date of judgment, an annual amount of $359.40 to be paid for the remainder of E.L.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

q. For future unreimbursable Wheelchair Tray expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $100.00. Then, on the anniversary of the date of judgment in year 2026, a lump sum of $100.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

r. For future unreimbursable Recreational Activity expenses, beginning on the first anniversary of the date of judgment, an annual amount of $350.00 to be paid for the remainder of E.L.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

s. For future unreimbursable Diaper, Wipe, and Depends expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,922.77 to be paid up to the anniversary of the date of judgment in year 2021. Thereafter, beginning on the anniversary of the date of judgment in year 2021, an annual amount of $1,259.49 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

t. For future unreimbursable Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,400.00 to be paid up to the anniversary of the date of judgment in year 2023, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

u. For future unreimbursable YMCA expenses, beginning on the first anniversary of the date of judgment, an annual amount of $780.00 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $492.00 to be paid up to the anniversary of the date of judgment in year 2075, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

v. For future unreimbursable Hand Cycle expenses, on the anniversary of the date of judgment in year 2026, a lump sum of $7,200.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $7,200.00. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $720.00 to be paid up to the anniversary of the date of judgment in year 2067, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

w. For future unreimbursable Certified Nursing Assistant expenses, beginning on the first anniversary of the date of judgment, an annual amount of $24,897.64 to be paid up to the anniversary of the date of judgment in year 2030. Then, beginning on the anniversary of the date of judgment in year 2030, an annual amount of $49,795.28 to be paid up to the anniversary of the date of judgment in year 2064. Thereafter, beginning on the anniversary of the date of judgment in year 2064, an annual amount of $74,692.92 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

x. For future unreimbursable Homemaker expenses, beginning on the anniversary of the date of judgment in year 2030, an annual amount of $2,080.00 to be paid for the remainder of E.L.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

y. For future unreimbursable Modified Van expenses, on the anniversary of the date of judgment in year 2026, a lump sum of $54,809.42. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $54,809.42. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $5,480.94 to be paid for the remainder of E.L.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

z. For future unreimbursable Driver's Evaluation expenses, on the anniversary of the date of judgment in year 2022, a lump sum of $3,000.00, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

aa. For future unreimbursable Home Modification and Generator expenses, on the anniversary of the date of judgment in year 2026, a lump sum of $79,772.00, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as E.L. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, and the Life Insurance Company shall be provided within twenty (20) days of E.L.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and his attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation either immediately or as part of the annuity contract, will be used solely for the benefit of E.L. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that he presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of E.L.'s estate under the laws of the State of Alabama. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing his appointment as guardian/conservators of E.L.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of E.L. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian/conservator of the estate of E.L. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in his individual capacity and as natural guardian of E.L., on behalf of himself, E.L., and E.L.'s heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal

injuries to or death of E.L. resulting from, or alleged to have resulted from the vaccination administered on December 1, 2010, as alleged by petitioner in a petition for vaccine compensation filed on or about October 29, 2013 and amended on September 10, 2015, in the United States Court of Federal Claims as petition No. 13-852V.

18. If E.L. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the flu vaccine caused E.L. to suffer neurological injuries and/or TM, or any other injury or condition.

23. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of E.L.

END OF STIPULATION

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

12

Respectfully submitted,

PETITIONER:

_/s/ Adam Luna_
ADAM LUNA, parent of
E.L., a minor

ATTORNEY OF RECORD FOR
PETITIONERS:

_Ronald C. Homer by Meredith Daniels_
RONALD C. HOMER, ESQ. Rule 83.1(c)(3)
Conway, Homer & Chin-Caplan, P.C.
16 Shawmut Street
Boston, MA 02116
Tel: (617) 695-1990

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

_/s/ Narayan Nair_
NARAYAN NAIR, M.D.
Acting Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 08N146B
Rockville, MD 20857

Dated: _____

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

_/s/ Catharine E. Reeves_
CATHARINE E. REEVES
Acting Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

ATTORNEY OF RECORD FOR
RESPONDENT:

_Julia W. McInerny by Lindsay Reinz_
JULIA W. MCINERNY
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 353-3919